IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | Case No. 16-po-4622 |
| v. | * | |
| | * | |
| | * | |
| OSCAR A. HERNÁNDEZ-AYALA, | * | |
| | * | |
| | * | |
| Defendant | * | |

**\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on Defendant's Motion to Suppress (ECF No. 11) and the Government's Response (ECF No. 12). For the reasons that follow, Defendant's Motion is **DENIED**.

## BACKGROUND

At the hearing on the Motion to Suppress, United States Park Police ("USPP") Officer John Zarate was the only witness called by the Government. Officer Zarate testified that on April 24, 2016, about midnight, he was parked on the right shoulder of the ramp from the Baltimore-Washington Parkway (the "Parkway") to Riverdale Road.[1] At that time Officer Zarate was standing outside his USPP cruiser assisting another officer with a traffic stop. While he was assisting the other officer, Officer Zarate observed a blue jeep pass his location on the ramp. He observed another vehicle directly behind the jeep. The second vehicle stopped at Officer Zarate's location. The driver of that vehicle identified himself as an off-duty police

---

[1] Administered by the National Park Service, the Parkway is within the special maritime and territorial jurisdiction of the United States. *See* 18 U.S.C. § 7(3); *United States v. Rubio*, 87 F.3d 1309, No. 95-5421, 1996 WL 329630, at *1 n.1 (4th Cir. June 17, 1996) (per curiam) (unpublished table decision).

officer and advised Officer Zarate that the driver of the jeep may have been a drunk driver. Officer Cephas, the off-duty police officer, was on his phone with USPP communications when he stopped to alert Officer Zarate. Officer Zarate observed the jeep at the end of the ramp turn westbound onto Riverdale Road, which is outside federal jurisdiction. Officer Zarate got into his cruiser, drove up the ramp, and then proceeded westbound on Riverdale Road to catch up to the jeep. Officer Cephas followed. While he was in the process of catching up to the jeep, Officer Zarate observed the jeep strike the left curb of the center median. At that point Officer Zarate activated his lights and siren and pulled the jeep over. Officer Zarate testified that the point on Riverdale Road at which the jeep struck the curb was slightly less that one-half mile from the ramp from the Parkway. He further testified that he could not stop the jeep before the jeep hit the curb because he was still in the process of catching up with it and that, on the basis of the information he received from Officer Cephas, he would have pulled the jeep over even if it had not struck the curb.

After the stop, Officer Zarate approached the jeep and found Defendant to be the driver. He asked Defendant for his license and registration. As he did so he noticed a strong odor of alcohol coming from the jeep. He asked Defendant to step out of the jeep. Officer Zarate then administered the horizontal-gaze nystagmus test on Defendant. He did not administer any other field sobriety tests on Defendant because the passenger in Defendant's vehicle advised Defendant not to perform any other tests. Officer Zarate then arrested Defendant.

Officer Cephas had followed Officer Zarate on Riverdale Road and stopped after Officer Zarate stopped Defendant. In fact, while Officer Zarate was interacting with Defendant, Officer Cephas was maintaining contact with the passenger. He further advised Officer Zarate that earlier, while he was on the Parkway, Defendant had cut him off, driven on the shoulder, and

nearly hit a stone wall. At that point he called 911 and was connected with the USPP. He was on that call when he saw Officer Zarate on the ramp.

Defendant was transported to the police station, where he refused a chemical test. After a telephonic warrant to obtain a blood sample for chemical testing was obtained, two samples of Defendant's blood revealed a blood-alcohol concentration of .26. Defendant was charged with violations of 36 C.F.R. §§ 4.23(a)(1) and (2), 4.23(c)(2), and 4.22(b)(1) and (3).

## **DISCUSSION**

Defendant seeks to suppress the evidence obtained by the USPP because he contends that the initial stop, detention, and arrest violated Maryland law and the Fourth Amendment. Under 54 U.S.C. § 102701(a)(2)(D), USPP officers may "conduct investigations of offenses against the United States committed in the [National Park] System in the absence of investigation of the offenses by any other Federal law enforcement agency having investigative jurisdiction over the offense committed or with the concurrence of the other agency." There is thus no geographical limit on the ability of USPP officers to conduct investigations of offenses against the United States committed in the National Park System. *See United States v. Smith*, 713 F.2d 491, 494 (9th Cir. 1983). USPP officers may make warrantless arrests, however, only "within the System" or if the arrestee "is fleeing from the System to avoid arrest." 54 U.S.C. § 102701(a)(2)(B); *see United States v. Ryan*, 731 F.3d 66, 68 (1st Cir. 2013).

"Because an ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments, such action must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993) (citation omitted). Accordingly, when an

3

officer observes even a minor traffic offense, a stop of the vehicle is constitutionally permissible. *Id.* at 730. Under *Terry v. Ohio*, 392 U.S. 1 (1968),

> an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. To conduct a *Terry* stop, there must be at least a minimal level of objective justification for making the stop. Reasonable suspicion requires more than a hunch but less than probable cause and may be based on the collective knowledge of officers involved in an investigation. In evaluating police conduct in a *Terry* stop, courts must consider the totality of the circumstances, including all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect. Reasonable suspicion may be supported by second-hand information, such as a tip, provided the tip possesses sufficient indicia of reliability.

*United States v. Davis*, 129 F. App'x 35, 36 (4th Cir. 2005) (per curiam) (citations omitted). "Where the informant is known or where the informant relays information to an officer face-to-face, an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion." *United States v. Perkins*, 363 F.3d 317, 323 (4th Cir. 2004).

Here, the Court finds that Officer Cephas's in-person tip was sufficiently reliable to support Officer Zarate's reasonable suspicion that Defendant had been driving drunk on the Parkway. Officer Cephas was directly behind Defendant's jeep when he stopped to alert Officer Zarate. Contemporaneously, he was on the phone with USPP communications when he stopped to alert Officer Zarate. Finally, Officer Zarate observed Defendant's jeep turn onto Riverdale Road as he was alerted by Officer Cephas. The Court finds that under the totality of the circumstances the indicia of reliability surrounding Officer Cephas's report provided Officer Zarate with reasonable suspicion that the driver of the jeep was impaired. *See Navarette v. California*, 134 S. Ct. 1683, 1688-90 (2014) (finding that indicia of reliability associated with 911 call provided officer with reasonable suspicion to stop suspect's vehicle). On the basis of

4

Officer Zarate's reasonable suspicion, he had the statutory authority to investigate and perform a traffic stop outside the Parkway under 54 U.S.C. § 102701(a)(2)(D). *See United States v. Jones*, 428 F. Supp. 2d 497, 504 n.5 (W.D. Va. 2006).

Furthermore, although Officer Zarate lacked the statutory authority under 54 U.S.C. § 102701(a)(2)(B) to arrest Defendant outside the Parkway because Defendant was not fleeing from the officer, "an extraterritorial arrest is not a *per se* violation of the Fourth Amendment." *Ryan*, 731 F.3d at 70. "[F]or an officer to arrest an obviously intoxicated driver just outside that officer's territorial jurisdiction, after a lawful traffic stop, is 'not remotely' akin to the invasions of privacy that might call for the exclusion of evidence." *Id.* Rather, the Fourth Amendment protects against unreasonable searches and seizures. "When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety." *Virginia v. Moore*, 553 U.S. 164, 178 (2008). "So long as the arrest is based on probable cause, it is constitutionally permissible and the Fourth Amendment does not require exclusion of the evidence recovered from the arrest or the search incident to that arrest." *United States v. Strasnick*, Criminal Action No. 08-PO-224 JLA, 2008 WL 2389789, at *3 (D. Mass. June 10, 2008). "The issue of reasonableness, thus, does not turn on the legality of the arrest." *Id.* (citing *Jones*, 428 F. Supp. 2d at 503). "The underlying command of the Fourth Amendment is reasonableness, and the fact that an arrest may have violated a territorial-limitation statute, whether it be state or federal, is merely a factor to be considered when deciding whether this constitutional mandate has been followed." *Jones*, 428 F. Supp. 2d at 503.

Here, although following Defendant on Riverdale Road may not have furnished Officer Zarate with the probable cause to believe that Defendant had committed a DUI offense on the

5

Parkway, once the officer pulled Defendant over after he struck a median, the odor of alcohol from Defendant, the results of the field sobriety test, and the additional information provided by Officer Cephas at the scene regarding his observations of Defendant's driving behavior on the Parkway, provided the officer with probable cause for the DUI offense. *See Strasnick*, 2008 WL 2389789, at *4. "Ultimately, the motivation for pulling [Defendant] over does not compromise the reasonableness of the stop. So long as there is probable cause to believe that a criminal offense has been or is being committed, a warrantless arrest is reasonable under the Fourth Amendment." *Id.* (footnote omitted). Moreover, an extraterritorial investigation does not exceed the investigative scope under § 102701(a)(2)(D) where the probable cause was gathered outside the Parkway. *See id.*; *see also United States v. Guillie*, No. CR.A. 02-288, 2002 WL 31640489, at *3, *5 (E.D. La. Nov. 15, 2002) (park rangers may conduct investigations outside of park system boundaries where the offense being investigated was committed within the park, and when the extraterritorial stop leads to probable cause for a different offense, it is sufficient that "the unlawful conduct that triggered the chain of events occurred in the park").

Thus, Officer Zarate was authorized to stop Defendant outside the Parkway for the purpose of conducting an investigation into Defendant's initial traffic violation on the Parkway. *See* 54 U.S.C. § 102701(a)(2)(D); *see also Whren v. United States*, 517 U.S. 806, 810 (1996). The events leading up to and following the stop established probable cause to believe that Defendant had committed a DUI offense on the Parkway. *See Strasnick*, 2008 WL 2389789, at *4. Probable cause sufficient to fulfill the reasonableness safeguard of the Fourth Amendment having been shown, Defendant's Motion to Suppress (ECF No. 11) thus is **DENIED**.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion to Suppress (ECF No. 11) is **DENIED**.

Date: June 21, 2017                                     /s/
                                                        Thomas M. DiGirolamo
                                                        United States Magistrate Judge